39264. SHAW v. THE STATE.

SMITH, Justice.

Tom Shaw was indicted for aggravated assault on a peace officer, robbery, and simple battery. He was convicted on all three counts and sentenced to a total of thirty-one years imprisonment, with two fifteen-year terms to run consecutively and a one-year term to run concurrently. On appeal from the denial of his motion for new trial, the Court of Appeals affirmed Shaw's conviction. *Shaw v. State,* 163 Ga. App. 615 (294 SE2d 676) (1982). We granted certiorari and now reverse.

This case arises out of the March 1981 beating of Dooly County Deputy Sheriff Terry Wright. Shaw was originally indicted and tried for the crime in April 1981, but the jury was unable to reach a verdict and a mistrial was declared. Shaw was retried in July 1981, resulting in the conviction now on appeal. The general circumstances of Shaw's retrial are set forth in the Court of Appeals' opinion. We include additional facts as they relate to Shaw's contention that he was denied assistance of counsel.

During his first trial, Shaw was represented by Benjamin Zeesman, who at that time also represented Shaw in a number of pending but unrelated misdemeanor cases. Following the mistrial, Shaw became dissatisfied with Zeesman and decided to change attorneys. On May 15, 1981 (some two weeks after his first trial ended in a mistrial and 76 days before the commencement of his retrial), Shaw visited the offices of Tifton attorney David Perry for the purpose of retaining Perry's services for the retrial. After conferring about the case, Perry and Shaw signed a document entitled "Criminal Fee Contract" and Shaw wrote Perry a check in the amount of $50. The fee contract states that Perry's law firm "*has been retained* by Tom Shaw to represent Tom Shaw as a result of criminal charges in Dooly County, Georgia, wherein the charge is Agg. Assault & Armed Robbery & Simple Battery." (Emphasis supplied.) The retainer fee agreed upon was $1000.

At the May 15 meeting, Perry instructed Shaw to inform Zeesman that Perry would represent Shaw at the retrial and to request that Zeesman forward his file from the first trial to Perry. Shaw, while returning to Dooly County that same day, stopped by Zeesman's Cordele law offices and told Zeesman that he was discharged in the aggravated assault case. Shaw and Zeesman agreed that Zeesman would continue to represent Shaw in the pending misdemeanor cases, for which Zeesman had already been paid. In response to Shaw's request for his case file, attorney Zeesman informed him that no such file existed. In addition, contrary to the usual practice in Dooly County Superior Court, Zeesman failed to notify the court, the clerk's office, or the district attorney that he had been discharged from the aggravated assault case by Shaw.

Approximately ten days after his initial consultation with Shaw, Perry traveled to Dooly County and met with Shaw, observed the scene of the beating, and interviewed prospective witnesses for the upcoming trial. Perry also visited the Dooly County Clerk of Court's office, where he reviewed the file of Shaw's first trial and made photostatic copies of relevant documents. Perry again visited Shaw in mid-June, at which time he accepted a check for $350 as payment for his services as Shaw's attorney.

On Monday, July 27, Shaw was arraigned in Dooly County Superior Court. When Shaw's case was called, Zeesman informed the court (for the first time, it appears) that he was no longer Shaw's attorney of record in the case. Shaw then informed the judge that he had retained Perry as his lawyer for the retrial. The court advised Shaw that his case was set for trial on Thursday, July 30, three days later; and that Shaw should be present at that time with counsel to represent him. After leaving the courtroom Monday afternoon, Shaw called Perry's office, only to learn that the attorney was out of state on vacation.

On Tuesday, July 28, Perry's secretary informed him by telephone that Tom Shaw had called the day before and told her that his case would proceed to trial on Thursday. Perry advised her to call the clerk of Dooly County Superior Court and request a continuance. The secretary did so, but was informed that the judge would not grant a continuance. On July 29, Perry attempted to get an airline flight back to Georgia, but was unable to do so because of the impending air traffic controllers' strike. Attorney Perry, while maintaining throughout that Shaw never formally retained him for purposes of conducting his trial defense, testified at the hearing on Shaw's motion for new trial that, in his opinion, Shaw honestly believed that Perry would represent him at the retrial if he paid Perry

the remaining $600 by the date of the commencement of the retrial. In addition, Shaw testified that once he learned that Perry could not represent him, he contacted four other area attorneys in hopes of securing a lawyer for the July 30 trial date. All declined to take the case on such short notice.

On Thursday, July 30, the case was called for trial. Shaw immediately announced that he had no attorney and moved for a continuance. The court denied the motion, stating that attorney Perry's failure to appear "has nothing to do with the trial of this case . . . [Y]ou may have [an] action against attorneys for not complying with your contractual relationship . . . [But the] only issue before the Court is whether or not these charges can be proven by the State and this is the business we must be about . . ." The court offered to appoint the public defender to represent Shaw during the trial. Shaw refused, stating "I'm going to just tell you point blank, I'm not willing to proceed with an appointed attorney in this case." Shaw did, however, agree to "talk with" the public defender during trial. The case proceeded to trial with Shaw acting as his own attorney, with occasional assistance from the public defender, who sat at the defendant's table with Shaw during trial.

The only enumeration of error we need address is Shaw's contention that the trial court's denial of his July 30, 1981, motion for a continuance denied him assistance of counsel in his defense. Art. I, Sec. I, Par. XI (Code Ann. § 2-111) of the 1976 Georgia Constitution states unequivocally that "[e]very person charged with an offense against the laws of this State shall have the privilege and benefit of counsel . . ." This court has construed this provision to "confer upon every person indicted for crime a most valuable and important constitutional right, [which] entitles him to be defended by counsel of his own selection whenever he is able and willing to employ an attorney and uses *reasonable diligence* to obtain his services. No person meeting these requirements should be deprived of his right to be represented by counsel chosen by himself, or forced to trial with the assistance only of counsel appointed for him by the court." *Delk v. State,* 100 Ga. 61 (27 SE 152) (1896). (Emphasis supplied.) See *Reid v. State,* 237 Ga. 106 (227 SE2d 24) (1976). Whether a particular defendant has exercised "reasonable diligence" in procuring counsel is a factual question, and the grant or denial of a request for continuance on grounds of absence of retained counsel is a decision within the sound discretion of the trial judge, reversible only for an abuse of that discretion.

The Court of Appeals, in affirming the trial court, found that Shaw "failed to meet both the financial and consultative obligations" necessary to the retention of Perry's services as attorney, and that the

"fault in misrepresentation" clearly lay with Shaw. We do not agree. Our review of the record indicates that the fault, if any, for Shaw's lack of counsel at trial rests not with Shaw, but with attorneys Zeesman and Perry. The following facts, developed at the hearing on Shaw's motion for new trial, support this conclusion: (1) Some ten weeks prior to the retrial Shaw and Perry entered into a written retainer agreement, and Shaw paid a substantial part of the fee agreed upon; (2) Zeesman failed to notify the court of his May 15 dismissal by Shaw, with the result that all court correspondence was forwarded to Zeesman, not Shaw or Perry; (3) Perry was out of state on the date of retrial and was unable to procure return transportation, all through no fault of Shaw; (4) Perry neglected to contact the clerk of court prior to leaving for his vacation; and (5) Following his discovery that Perry could not represent him, Shaw made a good faith, albeit unsuccessful, effort to obtain substitute counsel. These facts demonstrate that Shaw's request for a continuance was not a mere delaying tactic, and that he exercised reasonable diligence in attempting to obtain counsel for the retrial. The trial court therefore abused its discretion when it denied Shaw's motion and forced him to proceed to trial without the assistance of counsel.

*Reid v. State,* supra, cited by the Court of Appeals, is distinguishable and does not control our disposition of this case. In *Reid,* appointed counsel announced just prior to trial that an unidentified law firm had contacted him, requesting that the trial be delayed until they could arrive from out of town to represent the defendant. This court held that the motion for a continuance was properly denied where the defendant failed to prove counsel's alleged employment, identity, whereabouts or arrival time. As the above facts demonstrate, Shaw has shown much more than the "mere possibility of employment" alluded to in *Reid.*

Under the circumstances of this case, the trial judge had a duty to delay the proceedings long enough to ascertain whether Shaw had acted with reasonable diligence in obtaining Perry's services and whether Perry's absence was attributable to reasons beyond Shaw's control. The court did not attempt such an inquiry, instead stating that Shaw's lack of representation was irrelevant to the retrial proceedings and suggesting that Shaw might sue Perry in a separate proceeding for breach of their retainer agreement. This action by the trial court, and the resulting denial of Shaw's request for a continuance, was erroneous. See *Long v. State,* 119 Ga. App. 82 (166 SE2d 365) (1969); *Campbell v. State,* 128 Ga. App. 74 (195 SE2d 664) (1973). "Undue haste in the administration of the criminal law is as much to be condemned as unnecessary delay. The true course lies

between these two extremes." *Harris v. State,* 119 Ga. 114, 115 (45 SE 973) (1903).

*Judgment reversed. All the Justices concur, except Gregory, J., not participating.*

DECIDED JUNE 6, 1983 —
REHEARING DENIED JUNE 28, 1983.

*H. Christopher Coates, M. Laughlin McDonald, Neil T. Bradley,* for appellant.
*Gary C. Christy, District Attorney,* for appellee.